IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**RANDY ALLEN U.,**[1] **6:18-cv-02144-BR**

**Plaintiff,** **OPINION AND ORDER**

**v.**

**Commissioner, Social Security Administration,**

**Defendant.**

**SARA L. GABIN**
14523 Westlake Drive
Lake Oswego, OR 97035-8651
(503) 620-3171

Attorney for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1021

[1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**THOMAS M. ELSBERRY**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104
(206) 615-2112

Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Randy Allen U. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for SSI on May 17, 2011, and alleged a disability onset date of July 1, 2009. Tr. 204.[2] His application was denied initially and on reconsideration. On August 24, 2017, however, the Commissioner found Plaintiff to be

[2] Citations to the official transcript of record filed by the Commissioner on May 10, 2019, are referred to as "Tr."

disabled after February 22, 2017, when he suffered a traumatic brain injury following a motor-vehicle collision. Tr. 1314-27. An Administrative Law Judge (ALJ) held a hearing on July 13, 2018, as to Plaintiff's alleged disability during the closed period of May 17, 2011, through February 22, 2017. Tr. 1196-1226. At the hearing Plaintiff and a vocational expert (VE) testified. Plaintiff was represented by an attorney.

On October 5, 2018, the ALJ issued an opinion in which he found Plaintiff was not disabled during the relevant period and, therefore, was not entitled to benefits. Tr. 1170-95. At some point that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. Tr. 21. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on January 8, 1963, and was 55 years old at the time of the hearing. Tr. 204. Plaintiff has a high-school degree with some college course work. Tr. 1374-75. He does not have any past relevant work experience. Tr. 1184.

Plaintiff alleges disability during the relevant period due to a right rotator-cuff tear and antisocial personality disorder. Tr. 204.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the

medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 1176-77, 1182-84.

**STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690

(9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's Residual Functional Capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 416.945(a). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other

words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. 20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since his May 17, 2011, application

date. Tr. 1175.

At Step Two the ALJ found Plaintiff had the following severe impairments during the relevant period: right rotator-cuff tear, cervical spine degenerative disc disease, anti-social personality disorder, and "a history of alcohol dependence/abuse (now in reported remission)." Tr. 1175. The ALJ found Plaintiff's impairments of lumbar degenerative disc disease, emphysema, and diabetic neuropathy were not severe during the relevant period. Tr. 1177.

At Step Three the ALJ concluded Plaintiff's impairments did not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1 during the relevant period. The ALJ found during the relevant period Plaintiff had the RFC to perform light work with the following limitations: cannot push or pull with his right upper extremity; cannot lift his right upper extremity above shoulder level; cannot climb ropes, ladders, or scaffolds; cannot crawl; should not be exposed to unprotected heights or moving machinery or work "in teams"; can do "no more than occasional reaching, handling, fingering and feeling" with his upper right extremity; can lift and carry "no more than five pounds with his right upper extremity"; can lift up to 20 pounds occasionally and 10 pounds frequently with his left upper extremity; can do "no more than frequent overhead reaching with his left upper extremity"; and can have "only

incidental public contact." Tr. 1177-78.

At Step Four the ALJ concluded Plaintiff does not have any past relevant work. Tr. 1184.

At Step Five the ALJ found Plaintiff could perform jobs that existed in significant numbers in the national economy during the relevant period. Tr. 1184. Accordingly, the ALJ found Plaintiff was not disabled during the relevant period.

## **DISCUSSION**

Plaintiff contends the ALJ erred at Step Five when he (1) did not "properly reconcile[] VE testimony with the Dictionary of Occupational Titles (DOT)" and (2) did not reconcile the VE's testimony with the DOT and Plaintiff's RFC as to whether the parking-lot cashier job required more than "incidental" public contact.

### I. The ALJ erred at Step Five when he did not reconcile the VE's testimony with the DOT as to whether the parking-lot cashier job is sedentary or light exertion level.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).

When determining whether a claimant can perform work that exists in the national economy, "the ALJ may rely on an impartial vocational expert to provide testimony." *Gutierrez v. Colvin*, 844 F. 3d 804, 807 (9th Cir. 2016)(citing *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012)).

> The [DOT], a resource compiled by the Department of Labor that details the specific requirements for different occupations, guides the analysis. If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled.

*Id.* at 808 (citation omitted). "[N]ot all potential conflicts between [a VE's] job suitability recommendation and the [DOT's] listing . . . for an occupation will be apparent or obvious." *Id.* "For a difference between an expert's testimony and the [DOT's] listings to be fairly characterized as a conflict, it must be obvious or apparent. This means . . . the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Id.*

At the hearing the ALJ posed the following hypothetical to

the VE:

> [P]lease assume an individual with the same age, education and work experience as the claimant, who is limited to light work, except that he is unable to do any pushing or pulling with his right upper extremity. This individual cannot lift or raise his right upper extremity above the shoulder level, and is otherwise limited to no more than occasional reaching, handling, fingering or feeling with that extremity. This individual would be limited to lifting and carrying no more than five pounds with this right upper extremity. This individual is otherwise able to lift up to 20 pounds occasionally and 10 pounds frequently with his left upper extremity, but due to cervical degenerative disk disease, he would be limited to no more than frequent overhead reaching with his left upper extremity. This individual can never climb ropes, ladders or scaffolds. Can never crawl, and he would need to avoid any exposure to unprotected heights, moving machinery and similar hazards. This individual can never work in teams, and he can have only incidental public contact.

Tr. 1211-12. After the VE ascertained Plaintiff is right-handed, the VE testified he "would be unable to proffer sample occupations that would comport with this RFC" primarily due to the "upper extremity work restrictions outlined in the hypothetical affecting the right upper extremity." Tr. 1212. In response the ALJ referred the VE, Mr. Hincks, to that portion of Social Security Ruling 83-12 relating to "special situations." Tr. 1213. The ALJ read the section to the VE and stated:

> [M]y interpretation, Mr. Hincks, is that an individual who has completely lost the use of one arm, while it's going to significantly erode the occupational base, this ruling suggests that a vocational expert should still be able to find some jobs, not at the sedentary occupational level, but at least at the light and higher

occupational level. So, at least based on what I'm reading here, the loss of that arm, the loss of use of an arm, complete loss of the use of an arm by itself at the light exertion level should not preclude, should not eliminate all jobs.

Tr. 1215-16. The ALJ noted Plaintiff had "not lost the entire use of his arm," but rather the "use of his right arm is significantly limited." Tr. 1216. The ALJ stated the ALJ's "suggest[ion] that [Plaintiff's] significant loss of use of [his] right arm is the primary factor that would eliminate all jobs at the light exertion level, and that seems to run contrary to what I'm reading here in this ruling." *Id.* The VE then explained "the combination of both upper extremity work restrictions would make it difficult for me to . . . proffer sample occupations in the light category." Tr. 1216. The VE noted "the only exception would be parking lot cashier," which has "an SVP of two and light work exertion level." Tr. 1216, 1218. The VE stated his testimony was consistent with the DOT.

Plaintiff's counsel questioned the VE about the parking-lot cashier job, and the VE explained the job did not involve any "real walking." Tr. 1221. Counsel and the VE then engaged in the following exchange:

Q. All right. What kind of lifting is involved in this job to make it a light exertion? There's not much walking obviously.

A. Correct. When this DOT code was last updated typically it was a standing only type of job, and since the last update, based on my work

experience over the last 15 or 20 years, people are now using stools.

Q. So, it's a sedentary job now?

A. No. It's consistent with sedentary work, yes, if you look at it with the use of the stool certainly, but it's still assigned light work exertion level.

Q. Do you think that's currently accurate, a light exertion level?

A. I'm just saying that in general employment and occupations evolve over time, and this DOT code was not updated for several years, and that's what taken place in -- the changes that have taken place in the occupation.

Q. So, let's say just within the DOT code as it was contemplated 20 years ago or so when it was a standing job, not a sitting job.

A. Yes.

Q. Let's assume an individual unable to stand more than five minutes continuously. Could that person do this job at light exertion?

A. If - and we have no sitting restrictions?

Q. No sitting restrictions.

A. Okay. Then that would not impact the performance of the work of parking lot cashier, because you can do it sitting down.

* * *

Q. And when the job is done sitting down, it's a sedentary job then. It's no longer a light exertion job, correct?

A. In practical terms, yes. Because you're not lifting much over a half a pound or a pound, and you're sitting.

Q. So, in practical terms, as the job now is

actually performed, it should be a sedentary job?

A. It's consistent with a sedentary work exertion profile.

Tr. 1221-23.

In his Opening Brief and Reply Plaintiff asserts there is a contradiction between the DOT and the VE's testimony as to whether the parking-lot cashier job is light or sedentary. The ALJ, however, did not reconcile any conflict and relied on the VE's testimony when he determined Plaintiff was not disabled during the relevant period. According to Plaintiff, the ALJ's failure to reconcile the conflict is material in light of the fact that Plaintiff would be presumed to be disabled under 20 C.F.R. 404 Subpart P, Appendix 2, Rule 201.12, if Plaintiff could perform only a sedentary job during the relevant period because Plaintiff turned 50 during the relevant period, he does not have any transferrable skills, and he has a high-school education. Thus, if the parking-lot cashier job is, in fact, not a light job, the ALJ failed to identify an light-exertion job that Plaintiff could perform during the relevant period and Plaintiff would be presumed to be disabled.

On this record the Court finds there is a contradiction between the DOT and the VE's testimony as to whether the parking-lot cashier job is light exertion or sedentary. The Court, therefore, concludes the ALJ erred when he failed to reconcile

the conflict and relied on the VE's testimony to conclude the Plaintiff was not disabled during the relevant period. The Court also concludes ALJ's error was not harmless.

**II. The ALJ erred at Step Five when he did not reconcile the VE's testimony with the DOT as to whether the parking-lot cashier job required more than "incidental" public contact.**

Plaintiff asserts the ALJ also erred when he did not reconcile the VE's testimony with the DOT and Plaintiff's RFC as to whether the parking-lot cashier job required more than "incidental" public contact.

As noted, Plaintiff's RFC includes a limitation of "no more than incidental public contact." The DOT code for parking-lot cashier, 211.462-010, includes a number of tasks a person in that job performs such as receiving cash from customers, making change, and issuing receipts or tickets to customers. In addition, the DOT references the Occupational Information Network (ONET) Code 49023A, which, in turn, includes as its most important "knowledge element":

> Customer and Personal Service
>
> Knowledge of principles and processes for providing customer and personal services including needs assessment techniques, quality service standards, alternative delivery systems, and customer satisfaction evaluation techniques.

https://occupationalinfo.org/onet/49023a.html. According to Plaintiff, therefore, there is a conflict between the DOT and the ALJ's evaluation of Plaintiff's RFC, and the ALJ erred when he

did not evaluate or reconcile that conflict.

On this record the Court concludes the ALJ erred when he failed to address or to reconcile the apparent conflict between the VE's testimony with the DOT and Plaintiff's RFC as to the amount of public contact required in the parking-lot cashier job.

**REMAND**

The Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

On this record the Court concludes further proceedings are necessary because it is unclear from this record whether the parking-lot cashier job is actually a sedentary job and whether the amount of public contact in that job is consistent with the DOT and the ALJ's evaluation of Plaintiff's RFC. Thus, the Court concludes a remand for further proceedings consistent with this Opinion and Order is required to permit the ALJ to resolve the ambiguities in his decision.

**CONCLUSION**

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 28 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 30th day of January, 2020.

Anna J. Brown

ANNA J. BROWN
United States Senior District Judge